**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

RUDOLPH HAWTHORNE,

                Plaintiff,                No. 9:17-CV-438
                                                      (LEK/CFH)

    v.

NURSE STURGEON,

                Defendant.

---

**APPEARANCES:**                                    **OF COUNSEL:**

Rudolph Hawthorne
03-A-3348
Bare Hill Correctional Facility
Caller Box 20
Malone, New York 12953
Plaintiff pro se

Attorney General for the                   DENISE P. BUCKLEY, ESQ.
   State of New York                         Assistant Attorney General
The Capitol
Albany, New York 12224
Attorney for Defendants

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff pro se Rudolph Hawthorne ("plaintiff), an inmate who was, at all relevant times, in the custody of the New York Department of Corrections and Community

---

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).

Supervision ("DOCCS") brings this action pursuant to 42 U.S.C. § 1983, alleging that Nurse Sturgeon – who, at all relevant times, was employed at Upstate Correctional Facility ("Upstate")[2] – violated his constitutional rights under the Eighth Amendment. Dkt. No. 5 ("Am. Compl."). Presently pending before the Court is defendant's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Dkt. No. 16. Plaintiff informed the Court that he did "not wish to file a response in this matter." Dkt. No. 18. For the following reasons, it is recommended that defendant's motion be granted.

## I. Background

The facts are reviewed in the light most favorable to plaintiff as the non-moving party. See subsection II infra. Plaintiff's Eighth Amendment claim centers on the medical treatment he received at Upstate following unsuccessful surgery on his left hand in January 2016 to treat carpal tunnel syndrome. See Am. Compl. at 2-3; Dkt. No. 16-1 ("Def. Mem. of Law") at 4. Plaintiff contends that after the surgery, he "continued to experience severe pain in [his] left hand" and attended sick call. Am. Compl. at 2. Plaintiff claims that "[t]his went on for several months before Nurse [Sturgen] finally scheduled an [appointment] to see non-party Dr. Schroyer in Dec. 2016." Id. "From the 31st of January, [plaintiff] . . . complained of the continued pain and lack of any kind of treatment." Id. at 3. Nurse

---

[2] Defendant corrects the spelling of Nurse Sturgeon's name to "Nurse Sturgen." See Dkt. No. 16-1 at 3. However, defendant uses both spellings interchangeably throughout the motion. See generally id. As it is unclear as to the correct spelling of defendant's name, the undersigned will use "Nurse Sturgen" for the purpose of this motion.

2

Sturgen "repeatedly offered" plaintiff Motrin, which he believes "exacerbates the problem." Id. Plaintiff has "a huge problem with Nurse [Sturgen] who continually refuses to schedule [him] [appointments] to see a doctor, and by doing so[,] she is denying [him] needed medical treatment." Id. On May 7, 2017, Nurse Sturgen informed plaintiff that "the only way [he] [would] receive treatment for this problem is if [he] got transferred" or went home. Id. "Because of their actions, [plaintiff] [was] denied corrective surgery, which has made [his] ability to function normally painful and unbearable." Id. Plaintiff alleges that because of the failed surgery and "Nurse [Sturgen's] unwillingness to provide basic and standard care," plaintiff lost 90% of mobility in his left hand. Id.; Def. Mem. of Law at 4. Separately, plaintiff alleges that the events that gave rise to his claim against Nurse Sturgen occurred on January 21, 2016. Id. at 2.

## II. Discussion

Plaintiff contends that Nurse Sturgen was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. See generally Am. Compl. Defendant argues that plaintiff's amended complaint must be dismissed because plaintiff has failed to plausibly allege facts to satisfy the objective and subjective components of medical indifference. Def. Mem. of Law at 7-12. Defendant also moves for dismissal on the grounds that plaintiff failed to exhaust his administrative remedies prior to commencing his action. Id. at 12-16.

3

## A. Legal Standard

Under Rule 12 (b)(6), a defendant may move to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When considering such a motion, a court must "construe plaintiff['s] complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiff['s] favor." Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009) (quoting Holmes v. Grubman, 568 F.3d 326, 335 (2d Cir. 2009)) (internal quotation marks omitted). However, this "tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009)) (internal quotation marks and alterations omitted).

Accordingly, to survive a motion to dismiss, a complaint must state a claim for relief that is "'plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (internal citations omitted). Determining whether plausibility exists is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Where, as here, a party seeks judgment against a pro se litigant, a court must afford

the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit stated,

> [t]here are many cases in which we have said that a *pro se* litigant is entitled to special solicitude, that a *pro se* litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into *pro se* submissions claims that are not consistent with the *pro se* litigant's allegations or arguments that the submissions themselves do not suggest that we should not excuse frivolous or vexatious filings by *pro se* litigants, and that *pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff, 537 F.3d at 191-92 ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, . . . a court is obliged to construe his pleadings liberally.") (internal citations omitted).

### B. Eighth Amendment Deliberate Indifference

The Eighth Amendment forbids the infliction of "cruel and unusual punishments" on those convicted of crimes, "which includes punishments that involve the unnecessary and wanton infliction of pain." U.S. CONST. amend. VIII; Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (citing Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The

5

deliberate indifference standard consists of both an objective and subjective component. Hathaway, 37 F.3d at 66. The objective component requires the plaintiff to demonstrate that his alleged medical need is "sufficiently serious." Id. The subjective component requires a showing that the defendant has acted with a "sufficiently culpable state of mind." Id.

As a threshold matter, in order for a prisoner to state a cognizable claim of deliberate indifference, he must make a showing of serious illness or injury. Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003) (citation omitted). A "sufficiently serious" medical need is "a condition of urgency, one that may produce death, degeneration, or extreme pain." Hathaway, 37 F.3d at 66 (quoting Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting)). As there is no bright-line rule to determine whether a condition is sufficiently serious, the Second Circuit has identified several factors that are highly relevant to the inquiry, including: "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003) (citing Chance, 143 F.3d at 702 (internal citation omitted)).

"In Jones v. Westchester County Department of Corrections, . . . the court held that, on a motion to dismiss, the plaintiff 'adequately pleaded' the objective element by alleging that he experienced chronic pain and that the pain 'would have been alleviated' if he had been given reasonable care.'" Lloyd v. Lee, 570 F. Supp. 2d 556, 568 (S.D.N.Y. 2008) (quoting Jones v. Westchester Cnty. Dep't of Corr., 557 F. Supp. 2d 408, 415 (S.D.N.Y.

6

2008)). Plaintiff alleges that he suffered severe pain in his left hand from an unsuccessful carpal tunnel surgery. See Am. Compl. at 2-3. He contends that Nurse Sturgen continually refused to schedule plaintiff to see a physician, and that he continued to experience significant pain and loss of function in his left hand. See id. Even assuming for the purposes of this motion that plaintiff had a sufficiently serious medical need that satisfied the objective component and warranted protection under the Eighth Amendment, plaintiff fails to plausibly allege that Nurse Sturgen acted with a "sufficiently culpable state of mind." Hathaway, 37 F.3d at 66.

A prison official acts with a sufficiently culpable state of mind when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. "Deliberate indifference is a mental state equivalent to subjective recklessness" which "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." Id. (quotation marks omitted). Further, "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment claim." Chance, 143 F.3d at 703. Therefore, any "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of intervention, are not adequate grounds for a Section 1983 claim." Randle v. Alexander, 960 F. Supp. 2d 457, 481 (S.D.N.Y. 2013). The undersigned finds that plaintiff's allegations, as plead, even read

7

in the light most favorable to him, do not indicate that Nurse Sturgen was "actually aware of a substantial risk that serious harm would result." Farmer, 511 U.S. at 837.

Plaintiff contends that beginning on January 31, 2017, he "complained of the continued pain and lack of any kind of treatment" regarding the pain in his left hand. However, plaintiff does not allege how frequently he lodged these complaints with Nurse Sturgen, or if the complaints were directed to other medical personnel at sick call. Moreover, plaintiff acknowledges that Nurse Sturgen "repeatedly offered" him Motrin. See Am. Compl. at 3. Nurse Sturgen's course of action in providing plaintiff with Motrin fails to demonstrate culpable reckless, as it establishes that she responded to plaintiff's alleged complaints of pain by providing pain medication. That plaintiff may have "preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation." Wright, 694 F. Supp. 2d at 155 (citing Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986)). Insofar as plaintiff alleges that Nurse Sturgen refused to schedule him an appointment with a physician, plaintiff does not indicate how long the alleged delay was or how his condition worsened as a result of not seeing a doctor. Further, plaintiff does not demonstrate that this alleged delay was intentional. See Estelle, 429 U.S. at 104-05 (holding that, to demonstrate deliberate indifference, a plaintiff must show that defendant intentionally delayed medical care or infringed access to prescribed treatment); Bell v. Jendell, 980 F. Supp. 2d 555, 562 (S.D.N.Y. 2013) (noting that dismissal is appropriate "where prisoners merely allege a delay in the provision of medication or treatment, but fail to allege that the delay was either intentional or reckless."); Covington v. Westchester Cnty. Jail, No. 96 Civ. 7551 (SAS),

8

1998 WL 26190, at *2 n.1 (S.D.N.Y. Jan. 26, 1998) ("Deliberate indifference is properly pleaded by allegations of intentional efforts to delay plaintiff's access to medical care, complete denial of medical treatment, or a reckless or callous indifference to the safety of prisoners."). In fact, plaintiff fails to allege "facts from which an inference regarding [Nurse Sturgen's] state of mind can be made." Munoz v. Eliezer, No. 16-CV-6049 (NSR), 2018 WL 1626170, at *7 (S.D.N.Y. Mar. 30, 2018) (citing cases).

Further, even if Nurse Sturgen's decisions caused plaintiff unintended harm, negligence is not actionable under section 1983. See Burroughs v. Petrone, 138 F. Supp. 3d 182, 211 (N.D.N.Y. 2015) ("Deliberate indifference requires more than negligence but less than conduct undertaken for the very purpose of causing harm.") (internal quotation marks and citation omitted); see Daniels v. Williams, 474 U.S. 327 (1986) (concluding that negligence is not a cognizable claim under section 1983); Kucharczyk, 95 F. Supp. 3d at 537 ("[M]ere negligence is not enough to state a claim for deliberate indifference."). That Nurse Sturgen may have been negligent[3] in "diagnosing or treating" plaintiff's medical condition does not amount to deliberate indifference. Adams v. Rock, No. 9:12-CV-1400 (GLS/ATB), 2015 WL 1312738, at *7 (N.D.N.Y. Mar. 24, 2015) (citing Farmer, 511 U.S. at 835) ("Even negligence in diagnosing or treating an inmate's medical condition does not constitute deliberate indifference.").

Accordingly, as plaintiff fails to plausibly allege that Nurse Sturgen's treatment amounted to deliberate indifference, it is recommended that defendant's motion on this

---

[3] The undersigned makes no assessment as to whether plaintiff can state a claim as to negligence, a state-law claim not properly before this Court.

9

ground be granted.

### C. Exhaustion

Defendant contends that plaintiff's amended complaint must be dismissed on "the additional independent ground of plaintiff's failure to exhaust his administrative remedies." Def. Mem. of Law at 12. The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration. See Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Woodford v. Ngo, 548 U.S. 81, 82 (2006). The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532). Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as monetary damages. Id. at 524. To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated. See Jones v. Bock, 549 U.S. 199, 218 (2007) (internal citation omitted).

Although the Supreme Court of the United States has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. Cty. of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citation omitted). The Supreme Court recently held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." Ross v. Blake, __ U.S. __,136 S. Ct. 1850,

10

1862 (2016). Thus, the "special circumstances" exception in Hemphill v. New York, 680 F.3d 680, 686 (2d Cir. 2004) is no longer consistent with the statutory requirements of the PLRA. Williams v. Priatno, 829 F.3d 118, 123 (2d Cir. 2016).[4]

Although Ross eliminates the "special circumstances" exception, courts must still consider the PLRA's "textual exception to mandatory exhaustion." Ross, 136 S. Ct. at 1858. Under this exception, courts must determine whether administrative remedies were "available" to a prisoner. Id. The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859 (citing Booth v. Churner, 532 U.S. 731, 736, 738 (2001)). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

### 1. Did Plaintiff Exhaust his Administrative Remedies?

There is no genuine dispute that at all relevant times, DOCCS had in place a

---

[4] In Williams v. Priatno, the Second Circuit debated Ross's effect on Hemphill's estoppel exception. See Williams, 829 F.3d at 123. The Williams Court stated that "Ross largely supplants our Hemphill inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." Id. (citing Ross, 136 S. Ct. at 1858-59).

11

three-step inmate grievance program. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5.[5] "[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones, 549 U.S. at 216. Nevertheless, failure to exhaust may be the basis for dismissal on a motion to dismiss for failure to state a claim. See id. It is well-settled that "[i]f non[-]exhaustion is clear from the face of the complaint (and incorporated documents), a motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted." Scott v. Gardner, 287 F. Supp. 2d 477, 485 (S.D.N.Y. 2003) (internal quotation marks omitted) (quoting McCoy v. Goord, 255 F. Supp. 2d 233, 248 (S.D.N.Y. 2003)).

> If a prisoner chooses to plead facts regarding exhaustion, and those facts show that he failed to exhaust his available administrative remedies, then his complaint may be dismissed for failure to state a claim. Simply stated, if a prisoner says nothing or little about exhaustion in his *pro se* civil rights complaint, he is likely protected from a [Rule] 12(b)(6) motion to dismiss premised on failure to exhaust. However, if he says too much about exhaustion in that complaint so that his non-exhaustion is readily apparent, he may "plead himself out of court," as the saying goes.

Trapani v. Pullen, No. 9:14-CV-00556 (TJM/TWD), 2016 WL 1295137, at *6 (N.D.N.Y. Feb. 18, 2016) (internal quotation marks and citations omitted). In his amended complaint,

---

[5] First, the inmate must file a complaint with an inmate grievance program ("IGP") clerk within twenty-one days of the alleged incident. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(a)(1). An IGP representative has sixteen calendar days to informally resolve the issue. Id. § 701.5(b)(1). If no informal resolution occurs, the IGRC must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing. Id. §§ 701.5(b)(2)(i)-(ii). If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination. Id. § 701.5(c)(1). If the superintendent's determination is unfavorable, the inmate may appeal to the Central Office Review Committee ("CORC") within seven days after receipt of the superintendent's determination. Id. §§ 701.5(d)(i)-(ii). CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was received." Id. § 701.5(d)(3)(ii).

12

plaintiff contends that he filed a grievance at Upstate, and that he "appealed to the Superintendent, and then to Albany," but received "no response." Am. Compl. at 4. Thus, as plaintiff has chosen to plead facts regarding exhaustion in his amended complaint, the undersigned will address the issue of exhaustion.

Plaintiff attached a copy of his grievance, and the subsequent appeals to his complaint. On October 20, 2016, plaintiff filed a grievance – UST-59465-16 – alleging that an unnamed doctor "would not discuss any concerns that [he] had with [his] left hand and changed the subject avoiding the issue totally." Am. Compl. at 8. He requested that his medical concerns be addressed, and that he receive proper medical attention for the pain and discomfort in his left hand. Id. The Upstate Inmate Grievance Resolution Committee ("IGRC") denied plaintiff's grievance, noting that he had "made no mention of any problems with his left hand since June of 2016," and "no mention of any issues with his left hand were documented." Id. at 9. Plaintiff appealed this determination to the Superintendent. See id. On December 7, 2016, the Superintendent found no evidence of staff malfeasance, and directed plaintiff to address his medical concerns with the medical staff. Id. at 7. That same day, plaintiff appealed the Superintendent's decision to CORC, stating that his doctor's appointment had been cancelled, and he was told at sick call that the doctor was sick, and he could reschedule his appointment for next month. Id.

It is well-settled that "the PLRA requires that an inmate plaintiff must exhaust his available administrative remedies before commencing a lawsuit in federal court with respect to prison conditions." Peoples v. Beldock, 212 F. Supp. 2d 141, 142 (W.D.N.Y. 2002); see McMillian v. Walters, No. 9:16-CV-0277 (MAD/DJS), 2017 WL 8894737, at *2

13

(N.D.N.Y. Dec. 18, 2017), report-recommendation and order adopted by 2018 WL 879270 (N.D.N.Y. Feb. 14, 2018) ("The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action.") (citation omitted); Couvertier v. Jackson, No. 9:12-CV-1282 (DNH/DEP), 2014 WL 2781011, at *3 (N.D.N.Y. June 19, 2014) ("In the event the defendant establishes that the inmate plaintiff failed to fully complete [ ] the administrative review process prior to commencing the action, the plaintiff's complaint is subject to dismissal.") (internal citation and quotation marks omitted); White v. Drake, No. 10-CV-1034 (GTS/DRH), 2011 WL 4478988, at *3 (N.D.N.Y. Aug. 11, 2011) ("Included within the IGP's exhaustion requirement is the prerequisite that the inmate file an appeal with CORC and receive a response from CORC prior to filing a federal lawsuit.") (citation omitted). Here, plaintiff filed the original complaint in this action on April 20, 2017. See Dkt. No. 1. Plaintiff admits in his amended complaint that, at the time he filed the action, he had yet to receive a response from CORC. Am. Compl. at 4. The undersigned notes that approximately four months passed between when plaintiff appealed the Superintendent's decision to CORC and when he initiated this action.

Courts within this Circuit are split as to whether a delay by CORC constitutes unavailability that would excuse a plaintiff's failure to exhaust his administrative remedies. Compare Casey v. Brockley, No. 9:13-CV-01271 (DNH/TWD), 2015 WL 8008728, at *6 (N.D.N.Y. Nov. 9, 2015), report-recommendation and order adopted by 2015 WL 7864161 (N.D.N.Y. Dec. 03, 2015) ("CORC's failure to act within the time frame set out in the regulations does not constitute a special circumstance justifying the failure to exhaust.")

14

and Ford v. Smith, No. 9:12-CV-1109 (TJM/TWD), 2014 WL 652933, at *3 (N.D.N.Y. Feb. 19, 2014) (concluding that CORC's six month delay in responding to his appeal did not render the grievance process unavailable) with Rossi v. Fischer, No. 13-CV-3167 (PKC)(DF), 2015 WL 769551, at *6 (S.D.N.Y. Feb. 24, 2015) ("Because prison officials failed to respond to plaintiff's grievance within the 30 day time limit set by regulation, administrative remedies were not available to the plaintiff and dismissal for failure to exhaust is not appropriate.") and Peoples v. Fischer, No. 11 Civ. 2694(SAS), 2012 WL 1575302, *6 (S.D.N.Y. May 3, 2012) on reconsideration in part, 898 F. Supp. 2d 618 (S.D.N.Y. 2012) ("When a prisoner complies with all of the administrative requirements and makes a good-faith effort to exhaust, he should not be denied the opportunity to pursue his grievance in federal court simply because the final administrative decision maker has neglected to issue a final administrative determination").

However, it is clear from the grievance documents attached to the amended complaint that plaintiff does not name or otherwise reference Nurse Sturgen, or conduct attributable to Nurse Sturgen, in grievance UST-59465-16 or the subsequent appeal statement. See Am. Compl. at 6-10. In New York State, the IGP regulations do not require that an inmate's grievance contain the name of the offending official. See Espinal v. Goord, 558 F.3d 119, 126 (2d Cir. 2009). "[T]he IGP regulations offer the general guidance that a grievance should 'contain a concise, specific description of the problem,' . . . and the complaint form does not instruct the inmate to name the officials allegedly responsible for misconduct." Id. (internal citations omitted). Therefore, an inmate "is not required to name responsible parties in a grievance in order to exhaust his administrative remedies." Id.

15

However, the grievance "must place defendants on notice of what, substantively, is claimed in order to permit a proper investigation." Messa v. Woods, No. 9:07-CV-306, 2009 WL 3076120, at *6 (N.D.N.Y. Sept. 23, 2009) (citing Johnson v. Testman, 380 F.3d 691, 697 (2d Cir. 2004)). Here, it is clear that grievance UST-59465-16 did not address Nurse Sturgen or her alleged deliberate indifference to plaintiff's medical needs; instead, the grievance centers on the unnamed doctor's lack of response to his complaints of pain and discomfort. See Am. Compl. at 6-10. Thus, the undersigned finds that, even if plaintiff's grievance could be rendered unavailable by CORC's failure to timely respond, grievance UST-59465-16 failed to put defendant on notice of a deliberate indifference claim against Nurse Sturgen. Accordingly, it is recommended that defendant's motion on this ground be granted.

### III. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**RECOMMENDED**, that defendant's' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 16) be **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff's amended complaint (Dkt. No. 5) be **DISMISSED** in its entirety; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

 **IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen

days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72.[6]

Dated: August 8, 2018
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[6] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).